IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RAYMOND E. THORNTON,           )
                               )
         Plaintiff,            )
                               )
     v.                        ) Civ. Action No. 11-1024-GMS
                               )
LT. WEST, et al.,              )
                               )
         Defendants.           )

**MEMORANDUM**

**I. INTRODUCTION**

The plaintiff, Raymond E. Thornton ("Thornton"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] (D.I. 2.) He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 8.) The court now proceeds to review and screen the complaint pursuant to 28 U.S.C. § 1915 and § 1915A. Also pending are Thornton's requests for counsel and motion for injunctive relief. (D.I. 5, 17, 18.)

**II. BACKGROUND**

On June 11, 2011, Thornton was incarcerated at the Sussex Correctional Institution ("SCI"), Georgetown, Delaware, after he absconded from Level IV home confinement. At the SCI, he filed a grievance complaining that correctional officers ("C/O") misused Delaware Department of Correction ("DOC") computers and when inmates disturbed the C/O's use, the entire tier was punished by taking away half of their recreation with no disciplinary hearing.

---

[1]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

Thornton sent copies of his grievance to the defendants Sgt. Hubbs ("Hubbs") and Warden G. R. Johnson ("Johnson") but received no response.² He also discussed the grievance with the defendant Lauro B. Diaz ("Diaz") who advised him that inmates cannot dictate what officers can or cannot do. (D.I. 2 at ¶¶ 1-2, 42-43.)

On August 9, 2011, the day after Thornton submitted his grievance regarding misuse of the computer, he was "classified" and received a disciplinary report authored by Diaz charging him with disorderly or threatening behavior and disrespect for making statements on August, 3, 2011 about deceased police officer Chad Spicer who, at one time, had been a C/O at the SCI. The defendant Lt. Harris ("Harris') presided over a preliminary hearing on August 9, 2011. At that time, Thornton pled "not guilty" and was given a copy of his rights. Thornton requested that Diaz be called as a witness. The hearing was held and presided over by the defendant Lt. Vinson ("Vinson"). Thornton was not permitted his requested witness. Thornton was found "not guilty" of disorderly or threatening behavior and "guilty" of disrespect. (*Id.* at ¶¶ 3, 5-9, 43.)

An MDT (i.e., Multi-Disciplinary Team") classification hearing was held on August 4, 2011. Thornton, and the defendants Lt. West ("West") and Counselor Musser ("Musser") attended the hearing. Thornton was advised by West and Musser that he would be classified to the MSB (i.e., Multi-Security Building), and Thornton objected stating that he could be held in the pretrial building until his transfer to the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware.³ Thornton was advised by West and Musser that he

---

²He also sent them to non-parties the editor of the WBOC television station, the United States Attorney General, DOC Commissioner Carl Danberg, and the DOC Department of Justice.

³When Thornton was housed at the SCI, the defendant Aleta Jeff ("Jeff") provided reasons in his institutional file why he could not be around certain individuals. (*Id.* at ¶ 40.)

2

would be housed in the MSB until a transfer could be secured to the HRYCI. At that point, Thornton, who is diagnosed as bi-polar with violent episodes and ADHD, became explosive. West said to Musser, "let's just send him to VCC and see how he likes it. He should know better than to file paperwork around here, he's been down here long enough." Thornton was then told to lock into his cell. (*Id.* at ¶¶ 13-16.)

Next, Thornton received a disciplinary report on August 12, 2011 for failing to obey an order when he refused to transfer from the pretrial housing unit to the MSB. The defendant Sgt. Carver ("Carver") was called to the ASDA ("i.e., Administrative Segregation and Detention Area) by C/O Robert Rodriguez ("Rodriguez). Thereafter, Thornton was housed in the ASDA area of the MSB. (*Id.* at ¶ 10.)

On or about August 16, 2011, Thornton received a notice of classification assignment, dated August 12, 2011, with the recommendations and actions of the defendants Initial Classification Board ("ICB") and the Central Institutional Classification Committee ("CICC"), signed by the defendant Gerri Taylor ("Taylor") for the defendant Angus MacLennan ("MacLennan"), classification officer II. The ICB recommended a medium security classification and transfer to the VCC. The CICC reviewed the recommendation and approved a maximum security classification, transfer to the VCC, and approved Max programming. Thornton had also received a denial form from the Central Institutional Classification Board ("CICB"), dated August 10, 2011, signed by the defendant W.S. Evans ("Evans") explaining that it had considered the recommendation of a medium security classification at the VCC but it was denied based upon Thornton's institutional adjustment, it did not feel the classification would meet Thornton's program needs, and his mental health history. Thornton wrote to Taylor

3

expressing concerns for his physical and/or psychological safety should he be transferred to the MSB or the VCC. (*Id.* at ¶¶ 17-20.)

Thornton alleges that his transfer to the VCC was retaliatory. In this regard, Thornton refers to the statement of the defendant Lt. Hickman to another inmate when referring to Thornton, "look at his predicament, that's what happens when you file paperwork at SCI, you get moved." In addition, Thornton alleges that West submitted his classification to the VCC in direct response to the computer misuse grievance. Thornton alleges that, due to security reasons, he should not have been transferred to the VCC because, in the past, he assisted the DOC. As a result, Thornton cannot be around certain other inmates. Thornton alleges that McMahon seems to have no knowledge that Thornton's life is in jeopardy. (*Id.* at ¶¶ 31, 39, 46.)

Thornton alleges that West, Musser, Hickman, Johnson, the defendant Deputy Warden Valentino ("Valentino"), Hubbs, the defendant Major Truman Mears ("Mears"), members of the CICC board, members of the ICB, Taylor, MacLennan, Jett, the defendant the SCI mental health staff ("SCI mental health staff"), the defendant Jill Hare ("Hare"), Harris, and Vinson all had supervision, personal knowledge and/or participated in his transfer from the SCI to the VCC. In addition, he alleges that Evans and the defendants Warden Perry Phelps ("Phelps"), Deputy Warden Pierce ("Pierce"), VCC mental health staff ("VCC mental health staff"), and VCC mental health psychiatrists ("VCC psychiatrists") have supervision, personal knowledge of, and/or actively participated in the classification/reception of Thornton at the VCC. (*Id.* at ¶¶ 17-20, 44-45.)

Thornton was transferred to the VCC and placed in the SHU (i.e., Security Housing Unit). He complains that his conditions of confinement of recreation three hours per week,

4

inadequate portions and cold meals, forced lighting sixteen hours per day, no physical law library access, receipt of one roll of toilet paper and a small tube of toothpaste per week, loud noises night and day, soap like lye, an inadequate toothbrush, and no means of obtaining denture adhesive or deodorant violate his constitutional rights. (*Id.* at ¶¶ 22-25, 32, 34-36, 44.)

He also complains that he has received no bi-polar or ADHD medications for four months and, despite his request on September 6, 2011, has yet to been seen by mental health, and receives no type of therapy. In addition, he complains that the quality of life review/placement form provided by the defendant Michael McMahon ("McMahon") contains only generic treatment with no individualized plans. In addition, Thornton complains that his eyeglasses are broken and held together with tape and that he suffers from glaucoma. He filed a grievance to see optometrist Dr. Rudolpho Rio ("Dr. Rio"), and was seen by Dr. Rio on November 11, 2011, but has not yet received his glaucoma medication. Thornton was seen by a physician on September 15, 2011, who order medication for Thornton's asthmatic condition, and he received it on December 13, 2011. Thornton alleges that the SCI and VCC mental health staff and the VCC psychiatrists are deliberately indifference to his mental health issues. (*Id.* at ¶ 26-31, 33, 41, 45; D.I. 17.)

Thornton seeks punitive damages and injunctive relief for a transfer to the Delaware Psychiatric Center ("DPC"). His motion for injunctive relief also seeks a transfer to the DPC. (*See* D.I. 17.) Thornton also requests counsel. (D.I. 5, 17, 18.)

### III. STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a

defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Thornton proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court

must grant Thornton leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that Thornton has a "plausible claim for relief."[4] *Id.* at 211. In other words, the complaint must do more than allege Thornton's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

---

[4]A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

7

## IV. DISCUSSION

### A. Grievances

Thornton complains that there was no response to his grievance that complained C/O's misused DOC computers. The filing of prison grievances is a constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (not published). Although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances. *Booth v. King*, 346 F. Supp. 2d 751,761(E.D. Pa. 2004). To the extent that Thornton bases his claims upon his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail because an inmate does not have a "free-standing constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 2011 WL 3627393, at *2 (3d Cir. Aug. 18, 2011 (slip op.) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).

Thornton cannot maintain a constitutional claim based upon his perception that his grievance was not properly processed or that the grievance process is inadequate. Therefore, the court will dismiss the claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### B. Disciplinary Hearing

Thornton complains that his requested witness was not called at his disciplinary hearing. Hence, it appears that Thornton intends to raise a due process claim.

It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Rather, due process prohibits the deprivation of a

prisoner's liberty interest at a disciplinary hearing unless the prisoner is given: (1) an impartial decision-making body; (2) twenty-four hour notice of the charges; (3) an opportunity to call witnesses and present documentary evidence; (4) assistance from a representative; and (5) a written decision explaining the evidence relied upon. *Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). In addition, the disciplinary decision must be supported by at least "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

It is axiomatic, however, that to be entitled to procedural due process protections as set forth in *Wolff*, a prisoner must be deprived of a liberty interest. *See Wolff*, 418 U.S. at 557-558. The Due Process Clause itself confers no liberty interest in freedom from state action taken "within the sentence imposed." *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). Moreover, state created liberty interests protected by the Due Process Clause are generally limited to restraints on prisoners that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin*, 515 U.S. at 484).

Here, it is not apparent that Thornton was deprived of a liberty interest. Following the hearing he was found guilty of one offense, but not guilty of the other offense. Nor does the complaint indicate what, if any, sanction was imposed upon Thornton. At most, Thornton was reclassified to the MSB and remained there until mid-August. The allegations in the complaint do not indicate that Thornton was subjected to an atypical and significant hardship sufficient to trigger a liberty interest under Sandin. *See Young v. Beard*, 227 F. App'x. 138 (3d Cir. 2007) (not published). Thus, Thornton's claim fails. *See Henderson v. Kerns-Barr*, 2008 WL 2156357, at *1 (M.D. Pa. May 21, 2008) (assuming that the plaintiff was not afforded the

protections called for by *Wolff,* because the sanction of 90 days disciplinary confinement did not affect the inmate's release date, there was no liberty interest and, therefore, no trigger of due process rights).

As Thornton has not articulated a protected liberty interest, his due process claims will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## C. Classification and Transfer

Thornton alleges that his custody status classification from medium security to maximum security violates his constitutional rights. It is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. *See Wilkinson v. Austin,* 545 U.S. 209 (2005); *Olim v. Wakinekona,* 461 U.S. 238, 245 (1983); *Meachum v. Fano,* 427 U.S. 215, 224-25 (1976); *Montayne v. Haymes,* 427 U.S. 236, 243 (1976); *Moody v. Daggett,* 429 U.S. 78, 88 n. 9 (1976). Moreover, the custody placement or classification of state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum,* 427 U.S. at 225.

In addition, neither Delaware law nor DOC regulations create a liberty interest in a prisoner's classification within an institution. *See* 11 Del. C. § 6529(e). "'As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" *Hewitt v. Helms,* 459 U.S. at 468 (quoting *Montanye v. Haymes,* 427 U.S. at 242).

It has thus been determined that the transfer of a prisoner from one classification is

unprotected by "'the Due Process Clause in and of itself,'" even though the change in status involves a significant modification in conditions of confinement. *Hewitt*, 459 U.S. at 468 (citation omitted); *Moody v. Daggett*, 429 U.S. 78 (1976 ); *see also Lott v. Arroyo*, 785 F.Supp. 508, 509 (E.D. Pa. 1991) (plaintiff transferred from group home to correctional facility had no constitutionally enforceable right to participate in work release program); *Brown v. Cunningham*, 730 F.Supp. 612 (D. Del. 1990) (plaintiff's transfer from general population to administrative segregation, without being given notice and opportunity to challenge it, was not violation of plaintiff's liberty interest).

Further, Thornton fails to state a cognizable claim that his constitutional rights were violated when he was transferred to the VCC. The Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they choose. *Walls v. Taylor*, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003)). Moreover, the United States Supreme Court has held that an inmate has no due process right to be incarcerated in a particular institution whether it be inside the state of conviction, or outside that state. *Olim v. Wakinekona*, 461 U.S. at 251.

For the above reasons, the court will dismiss the classification and transfer claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).[5]

---

[5]Thornton's conclusory allegations of personal involvement and supervisory responsibility do not save his claims. As is well known, a defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). With regard to supervisory defendants, the Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat

**D. Conditions of Confinement**

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

Although the conditions under which Thornton allegedly lives may be harsh, they do not constitute a denial of "the minimal civilized measures of life's necessities." *See, e.g., Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995) (holding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld).

In addition, while Thornton claims he was denied certain amenities, he has named no specific individual, nor has he alleged that prison officials knew of, and disregarded, an excessive

---

superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (not published) (citing *Iqbal*, 129 S.Ct. at 1948-49*); Rode v. Dellarciprete*, 845 F.2d at 1207).

12

risk to his health or safety. *See Beers-Capitol*, 256 F.3d at 125. Thornton may find his conditions of confinement uncomfortable, but they are no different than those afforded to other inmates who are housed in SHU.

The allegations do not rise to the level of a constitutional violation. Therefore, the court will dismiss as frivolous the conditions of confinement claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### E. Medical Needs

Thornton, who has been diagnosed as bi-polar and with an ADHD, alleges that since his transfer to the VCC has not received mental health treatment or required medications. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). His claims are sufficient to survive screening. Therefore, he will be allowed to proceed against the VCC Mental Health Staff and the VCC Psychiatrists. All other medical needs claims will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### F. Retaliation

Thornton alleges that Diaz, West, and Musser retaliated against him because he filed a grievance complaining that C/O's misused DOC computers. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981). Proof of a retaliation claim requires that Thornton demonstrate: (1) he engaged in

13

protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (a fact finder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)).

Hickman told another inmate that action was taken against Thornton because he filed paperwork. His mere statement does not state a cognizable claim for retaliation and will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). The court, however, finds that Thornton has adequately alleged retaliation claims against Diaz, West, and Musser.

## V. MOTION FOR INJUNCTIVE RELIEF

Thornton moves for injunctive relief in the form of a transfer to the DPC. (D.I. 17.) Thornton claims that because his safety is in jeopardy he should be reclassified to a different housing assignment and, given his allegations, an immediate response from the defendant is necessary.

Accordingly, the court will direct Phelps to file a response to Thornton's motion for injunctive relief.

## VI. REQUESTS FOR COUNSEL

Thornton requests counsel on the grounds that he is unable to afford counsel, the complaint states a claim upon which relief may be granted, he is on lockdown status and has no physical access to he law library, the issues are complex and he is bi-polar and has not been on

needs assistance to deal with the urgency of his request for injunctive relief and has concerns that he will be transferred to a different housing assignment regardless of his safety concerns, and he needs counsel to assist in discovery.

A *pro se* litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel. *See Ray v. Robinson*, 640 F.2d 474, 477 (3d Cir. 1981); *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). It is within the court's discretion to seek representation by counsel for plaintiff, and this effort is made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting . . . from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984); *accord Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law).

After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel, including:

> (1) the plaintiff's ability to present his or her own case;
> (2) the difficulty of the particular legal issues; (3) the degree
> to which factual investigation will be necessary and the ability
> of the plaintiff to pursue investigation; (4) the plaintiff's capacity
> to retain counsel on his own behalf; (5) the extent to which a
> case is likely to turn on credibility determinations; and
> (6) whether the case will require testimony from expert witnesses.

*Tabron*, 6 F.3d at 155-57; *accord Parham*, 126 F.3d at 457; *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).

To date, Thornton has ably represent himself. In addition, this case is in its early stages and service has not yet taken place. Notably, should the need for counsel arise later, one can be appointed at that time. Upon consideration of the record, the court is not persuaded that appointment of counsel is warranted at this time. Accordingly, Thornton's requests for counsel will be denied without prejudice. (D.I. 5, 17, 18.)

## VII. CONCLUSION

For the above reasons, the court will deny without prejudice Thornton's requests for counsel. (D.I. 5, 17, 18.) In addition, the court will order Phelps to respond to Thornton's motion for injunction relief. (D.I. 17.) Thornton will be allowed to proceed with his medical needs claims against the VCC Mental Health Staff and the VCC Psychiatrists and his retaliation claims against Diaz, West, and Musser. All other defendants and claims will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

March 2, 2012
Wilmington, Delaware